IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARCUS DANIEL MCCLURE, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-22-548-P |
| | ) |
| KILOLO KIJAKAZI, | ) |
|   Acting Commissioner of the | ) |
|   Social Security Administration, | ) |
| | ) |
|   Defendant. | ) |

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I. Administrative History and Final Agency Decision

Plaintiff protectively filed his application for DIB on December 21, 2020, alleging disability since July 10, 2018. AR 17. The Social Security Administration denied Plaintiff's application on March 31, 2021, *see id.*, and on reconsideration on June 2, 2021. *Id.*

1

Plaintiff, appearing *pro se*, and a vocational expert ("VE") testified at a telephonic administrative hearing conducted before an Administrative Law Judge ("ALJ") on January 20, 2022. AR 33-49. On February 1, 2022, The ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 14-28.

Following the agency's well-established sequential evaluation procedure, the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity from July 10, 2018, the alleged onset disability date, through March 31, 2020, his date last insured. AR 19. At the second step, the ALJ found Plaintiff had the following severe impairments: persistent depressive disorder with anxious distress, insomnia, and bipolar disorder. *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. AR 20.

At step four, the ALJ found Plaintiff had the following residual functional capacity ("RFC") through his date last insured:

> [T]he claimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can only perform simple, routine, and repetitive tasks, but not at a production rate pace where the pace of one's work affects, or is affected by, the pace of other's work or by any externally controlled system or process. He can only respond appropriately to occasional changes in a routine work setting. He can only have occasional, superficial interaction with co-workers and the public, with

> "superficial" defined as such things as providing the time of day or directions about the workplace.

AR 24. Relying on the VE's testimony as to the ability of a hypothetical individual with Plaintiff's work history, age, education, and determined RFC, the ALJ concluded Plaintiff could perform his past relevant work as a cleaner. AR 27. Continuing to rely on the VE's testimony, the ALJ also concluded Plaintiff could perform the jobs of industrial cleaner, laundry worker, and hand packer, each of which exist in significant numbers in the national economy. AR 27-28. Based on this finding, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from July 10, 2018, the alleged onset date, through the date last insured, March 31, 2021. AR 28.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Issues Raised

Though not a model of clarity, Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ erred in failing to develop the record. Doc. No. 20 ("Op. Br.") at 5-11. Second, Plaintiff asserts the ALJ's RFC is not supported by substantial evidence and instead, arises from errors the ALJ made in determining the RFC. *Id.* at 11-15.

III. <u>General Legal Standards Guiding Judicial Review</u>

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.  Duty to Develop the Record

Plaintiff asserts the ALJ violated his duty to develop the record before him by failing to order a consultative examination ("CE"). "To be sure, administrative disability hearings are nonadversarial[,] and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall*, 561 F.3d at 1062-63 (quotations omitted). The ALJ, however, is not required to act as Plaintiff's advocate in order to meet his duty to develop the record. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

One way that an ALJ may develop the record is to order a CE, and he has "broad latitude" in determining whether or not to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). An ALJ has a duty to order a CE when "the need for one is clearly established in the record." *Id.* at 1168. Such need is clearly established when "evidence in the record establishes a *reasonable possibility* of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Madrid v. Barnhart*, 447 F.3d 788, 791 (10th Cir. 2006). A CE is often required "where there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive[.]" *Hawkins*, 113 F.3d at 1166 (citations omitted).

The ALJ did consider a CE in this case, although it was not one he ordered. Plaintiff previously filed for social security income ("SSI") benefits and the Social Security Administration denied the same. AR 19. During those proceedings, the SSA ordered a mental CE. AR 19, 25, 303-05. Dr. Stephen R. Close performed the CE on August 23, 2017, less than one year prior to Plaintiff's current alleged disability onset date. AR 303-05.

Dr. Close noted that Plaintiff "received SSDI for bipolar disorder near twelve years of age." AR 303. At that age, Plaintiff was hospitalized at Cedar Ridge located in Oklahoma City, Oklahoma for angry outbursts and after release, began living with his father. *Id.* Sometime between 12 and 17 years of age, Plaintiff was hospitalized again for angry outbursts, this time at Parkside Hospital located in Tulsa, Oklahoma. *Id.* He also reported to Dr. Close that he saw multiple counselors throughout his childhood. *Id.* With regard to his employment history, Plaintiff reported that he was previously employed by Up Church located in Stillwater, Oklahoma but was terminated "following a temper outburst." *Id.* Express Employment placed him in two positions, but he was unsuccessful in each. He did not consistently go to work because there were "too many people." *Id.*

With regard to mental capacity, Dr. Close concluded Plaintiff had roughly average intellectual ability, but his fund of knowledge was limited. *Id.* Dr. Close did

not include any conclusions or opinions regarding Plaintiff's functional limitations, if any. Instead, he stated the following:

> Marcus describes a long history of negative mood states and anger. He described depressed mood more days than not with disturbed sleep, low self-esteem, and poor focus. While anger has been persistent for years, the history was not positive for manic episodes or nightmares. The mild-mannered and responsive young man was well focused during [the] interview. When asked about his future, he responded that he tries "not to look at the future." The impression is a young man demonstrating Persistent Depressive Disorder with social maladjustment. It is unclear whether Marcus has sufficient background to independently manage awarded benefits.

AR 304.

In his Opening Brief, Plaintiff asserts an overall criticism of the ALJ's decision by arguing that he erred by determining an RFC without a medical provider's functional limitation assessment. Plaintiff contends that the ALJ "admitted" that Dr. Close did not provide any functional limitations and, therefore, "the ALJ evaluated no medical opinions." Op. Br. at 5-6 (citing AR 26). Based on this, Plaintiff contends the ALJ failed to develop the record because he should have ordered another CE to assess limitations. *Id.* at 6.

As an initial matter, the Court notes that in criticizing the lack of functional limitation assessments in the record, Plaintiff does not acknowledge that three state agency mental consultants reviewed Plaintiff's records and found that Plaintiff did not suffer from any severe mental impairments. AR 59-67, 72-83, 440-54. Thus, the record contains multiple physician opinions that, as discussed in more detail below,

7

the ALJ considered. However, those physicians concluded Plaintiff did not suffer from any severe mental limitations. Had the ALJ adopted those opinions, it would have resulted in a less severe RFC than that set forth in the current decision.

Additionally, a review of the decision reveals that rather than "admitting" Dr. Close failed to include functional limitations, the ALJ merely reviewed the contents of Dr. Close's examination report. AR 21-22, 23, 25. As Defendant noted in her Response, the Tenth Circuit has "reject[ed] [the] argument that the ALJ failed to develop an adequate record regarding [his] mental impairment because he failed to seek an assessment of her ability to perform certain work-related activities" from a consultative examiner who did not include such information in his original report. *Branum v. Barnhart*, 385 F.3d 1268 (10th Cir. 2004).

> Although the governing regulations provide that a consultative examination report should contain a statement describing the opinion of the medical source about the claimant's abilities, despite his or her impairments, to perform certain work-related activities, *see* 20 C.F.R. § 416.919n(c)(6), the regulations further provide that "the absence of such a statement in a consultative examination report will not make the report incomplete." *Id.*

*Id.*

In *Branum*, the CE at issue was one previously ordered by the ALJ in relation to the disability application before him. *Id.* Here, however, as previously noted, the CE at issue arose from a previous application and was ordered by a different ALJ. It is not clear whether this factor would be relevant to the Tenth Circuit's holding.

Nevertheless, it is unnecessary to resolve that issue because in reviewing the ALJ's decision as a whole, the Court concludes that substantial evidence supports the same.

In evaluating Plaintiff's mental impairment, the ALJ properly analyzed Plaintiff's mental impairments. First, as required by 20 C.F.R. § 416.920a(e), the ALJ's decision documented his application of the special technique for evaluating mental impairments, and his decision "include[d] a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 416.920a(e)(2); *see* AR 20-24. Second, in his decision, *see* AR at 20-27, the ALJ set forth "the significant history . . . and the functional limitations that were considered in reaching [the] conclusion about the severity of [plaintiff's] mental impairments[.]" 20 C.F.R. Section 416.920a(e)(2).

Plaintiff complains that "some medical opinion must support the ALJ's RFC." Op. Br. at 6. The problem, however, is not that the medical record did not contain any medical opinions. Instead, Plaintiff's issue arises from the fact that the medical opinions contained therein did not support a finding of disability, or even severe impairments. As previously discussed, the ALJ cites specifically to three different State agency mental consultants, each of whom concluded that Plaintiff had only mild mental limitations. AR 20, 26 (citing AR 59-67, 72-83, 440-54). Indeed, Dr. Kelley provided a more detailed analysis, explaining:

>Functioning:

> 2/2/21 Clmt reports anxiety and depression limit his ability to work b/c it makes it hard for him to keep steady, communicate, achieve, and not be on edge. A typical day is mak[ing] something to eat, turning on his TV, playing some games on his phone, checking the mail, going to bed around 10 pm after Rx. He indicates sleep difficulty, no problems w/ personal care, makes frozen dinners, does chores, goes out alone, shops in stores, manages finances, enjoys watching TV/playing games/drawing, socializes, does not need appointment reminders or someone to go w/ him, no problems relating to others, reports anxiety is worse, pays attention at least 30 min, finishes what he starts, does great w/both written and spoken instructions, does not do well w/ authority, does not handle stress well, is kind of good w/ change in routine[.]
>
> Analysis:
>
> NH's last IP stay was prior to AOD, by his report he does not get depressed as much and is able to cope, he is managing his anxiety w/ coping skills learned in Tx. He reports paying attention, following instructions, and managing finances. Persistent Depressive DO w/ Anxious Distress imposes mild limitations to global functioning. Mental Impairment is not severe.

AR 454.

After hearing Plaintiff's testimony and reviewing the record, the ALJ concluded that the state agency mental consultants' finding that "claimant had only mild limitations" was "not consistent with and supported by the medical evidence of record because the claimant is more limited than Dr. Scott, Dr. Farrell, and Dr. Kelley found." AR 20; *see also* AR 26. As a result, the ALJ's RFC included limitations that the state agency physicians did not find necessary. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding the ALJ does not commit reversible error when evidence adverse to the plaintiff is tempered in the plaintiff's favor).

Plaintiff also argues that the ALJ failed to adequately account for his social anxiety issues by limiting him to "only occasional, superficial interaction with co-workers and the public, with 'superficial' defined as . . . providing the time or day or directions around the workplace." Op. Br. at 8; AR 24. Specifically, Plaintiff asserts that the ALJ concluded that Plaintiff did not have problems getting along with others. Plaintiff also criticized the ALJ making this conclusion allegedly without a medical expert assessment. Op. Br. at 8.

The ALJ clearly did not conclude Plaintiff had no problem getting along with others in light of the limitation to only occasional, superficial contact with the public and co-workers. AR 24. Further, the ALJ thoroughly explained his finding, and the evidence upon which he relied, that Plaintiff has a moderate limitation in his ability to interact with others.[1]

> He reported being able to spend time with others where he will watch TV or play games on a daily basis ([AR 250]). He reported no problems getting along with family, friends, neighbors, or others [(AR 251)]. He stated that he does not get along well with authority figures [(AR 252)]. He has never been fired or laid off from a job because of problems getting along with other people. His statements are fairly consistent with statements made in a third-party function report completed by the claimant's girlfriend, Deana Faulkner [(AR 231-38)]. The record also contained a third-party function report completed by the claimant's mother, Danielle McClure [(AR 265-72)]. This third-party function

---

[1] Additionally, in alleging that the RFC does not adequately account for his inability to get along with others, Plaintiff relies on his history or failing to attend therapy and refusing services. Op. Br. at 8 (citing AR 361, 362, 368, 420, 431, 435). However, while the cited records note various missed appointments, there is no basis to conclude that Plaintiff's failure to attend therapy or accept services is related to an inability to get along with others.

> report contained a greater degree of limitation than the claimant's self-completed function report and the third-party function report completed by Ms. Faulkner. However, the undersigned notes that Ms. McClure answered "I don't know" or "I'm not sure" to several questions and the record indicated that the claimant lived with Ms. Faulkner and not Ms. McClure. Objective evidence supports a finding that the claimant only has a moderate limitation in this area. At the consultative examination with Dr. Close, he was described as mild-mannered and responsive during the interview [(AR 304)]. In September 2020, treatment records showed that the claimant was cooperative and that he had good interpersonal skills [(AR 330)]. He also exhibited normal behavior/motor activities. In October 2020, records showed that the claimant had a cooperative attitude. In January 2021, the claimant again had a cooperative attitude [(AR 334)]. Given the record, the undersigned finds that the claimant only has a moderate limitation in interacting with others. The undersigned has accounted for this moderate limitation in the below-described residual functional capacity. He can only have occasional, superficial interaction with co-workers and the public, with "superficial" defined as such things as providing the time of day or directions about the workplace.

AR 21-22. The ALJ clearly considered the full medical record, Plaintiff's reports, and third-party function reports. He also explained his evaluation of each in reaching his conclusions.

Plaintiff also asserts that "the ALJ specifically found that [Plaintiff's] statement to Dr. Close [that] he was institutionalized at Parkside for an anger outburst to be 'inconsistent' because no records existed." Op. Br. at 9 (citing AR 25). As Defendant points out, however, Plaintiff has mischaracterized the ALJ's decision. The ALJ does not indicate that he questioned whether Plaintiff was hospitalized, or that he in some way discounted Plaintiff's statement related to the same. Rather, the ALJ noted generally that "the medical evidence of record is not

12

entirely consistent with the claimant's subjective complaints regarding his symptoms and degree of limitation." AR 25. He then proceeded to discuss the medical record as a whole. In doing so, he noted that Plaintiff reported to Dr. Scott that he was hospitalized at Parkside Hospital but that the ALJ did not have any records showing a psychiatric hospitalization. AR 25. The ALJ then specifically noted an inconsistency between Plaintiff's function report to the SSA that he had never been fired from a job because of problems with others and his report to Dr. Scott that he was fired from Up Church but was terminated due to a temper outburst. AR 25. Thus, the inconsistency the ALJ noted was not related to Plaintiff's hospitalization during his youth.[2]

Plaintiff next asserts the ALJ should have considered Ms. McClure's third-party function report in which she indicated that Plaintiff had been fired from a job. Op. Br. at 10. As established in the portion of the ALJ's decision quoted above, the ALJ did consider Ms. McClure's function report, noting that she indicated Plaintiff was more limited than Plaintiff's own function report. However, the ALJ determined that Ms. Faulkner's third-party function report was more reliable as it was more consistent with Plaintiff's and Ms. Faulkner lived with Plaintiff. *See, supra.*

---

[2] Additionally, Plaintiff does not indicate there is any information contained within the Parkside Hospital records that the ALJ should have reached a more limiting RFC.

13

A review of the ALJ's decision reveals that in evaluating Plaintiff's subjective reports and developing the RFC, he fully considered not only Dr. Close's examination report (AR 21, 22, 23, 25), but also the three state agency consultants' opinions (AR 20, 26), the third-party function reports (AR 21, 22, 23), and the medical record as a whole, including a detailed analysis of Plaintiff's treatment records from September 2020 through September 2021. AR 21, 22, 23, 25, 26. The ALJ explained his assessment, including his reasoning in finding, contrary to the state agency consultants, that Plaintiff suffered from severe mental impairments. AR 20-26.

Plaintiff's arguments regarding the ALJ's evaluation of his subjective reports, as well as his weighing of medical evidence and not ordering a CE, turn on Plaintiff's contention that the evidence could support different conclusions. That, however, is not the relevant standard of review on appeal. As noted above, that a district court might have reached a different result is not a basis for reversal absent a showing that substantial evidence does not support the ALJ's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). The ALJ followed the proper evaluation guidelines and substantial evidence supports his conclusions.

V. Steps Four and Five

Plaintiff argues the ALJ erred at Step Four of the sequential evaluation process by failing to compare Plaintiff's prior work with his current capabilities. Op. Br. at

7. During the administrative hearing, the ALJ presented the ultimate RFC to the VE and asked him if such an individual would be able to perform Plaintiff's past work as a cleaner. AR 46-47. The VE testified that Plaintiff's past relevant work as a cleaner has a reasoning level of two and that the individual the ALJ described would be able to perform the job both as Plaintiff performed and how the job is typically performed in the economy. AR 47. At step four in his decision, the ALJ explained:

> The claimant has past work as a cleaner (DOT No. 381.687-034), SVP 2 unskilled work requiring medium exertion as generally and actually performed. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed. At the hearing, the vocational expert testified that an individual with the above-described residual functional capacity would be capable of performing past work as a cleaner as generally and actually performed. The undersigned has adopted the opinion of the vocational expert. Therefore, the undersigned finds that the claimant was capable of performing past relevant work as a cleaner as generally and actually performed.

AR 27.

Plaintiff complains the ALJ failed to "fully investigate the demands" of his past relevant work. It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the VE, because in such cases, "the remainder of the step four assessment takes place in the VE's head" and "we are left with nothing to review." *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th

Cir. 1996). Here, however, the ALJ did not delegate the analysis to the VE. Instead, he referenced the VE's testimony approvingly, in support of his own findings. There was nothing improper about this and nothing more was required. *Id. See Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (noting that an ALJ is not required to use the words "I find" in connection with his conclusion regarding the demands of the plaintiff's past relevant work but "may rely on information supplied by the VE at step four." (quotations omitted)).

In Plaintiff's remaining argument, he contends the ALJ erred at Step Five of the sequential process. Op. Br. at 11-15. This assertion, however, is based upon Plaintiff's contention that the ALJ erred by failing to present a hypothetical question to the VE that included additional limitations not included in the RFC. Plaintiff's argument relies on those discussed above, as Plaintiff contends the ALJ's previous alleged errors led to him posing an incomplete RFC hypothetical to the VE. For the reasons discussed above, the ALJ's RFC determination is supported by substantial evidence, and the ALJ was under no obligation to include limitations in the RFC that are not supported by the record. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately

16

assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.").[3]

VI. Conclusion

Based on the foregoing analysis, the decision of the Commissioner is affirmed. Judgment will issue accordingly.

ENTERED this   7th   day of July, 2023.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

[3] In his Reply, Plaintiff raises an argument for the first time in this appeal that the job of cleaner, which the SSA describes as requiring a reasoning level of 2, is inconsistent with the RFC limiting Plaintiff to simple, routine, and repetitive tasks. Doc. No. 28 at 3-4. This Court will not address arguments raised for the first time in a reply brief. *See Brian G.M. v. Kijakazi*, No. 22-CV-246-MTS, 2023 WL 4108196, at *5 (N.D. Okla. June 21, 2023) ("This Court generally will not address an argument raised by a plaintiff for the first time in a reply brief." (citing *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) (noting that "the general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."); *Simmons v. Colvin*, 635 F. App'x 512, 514 n.2 (10th Cir. 2015) (applying rule in social security case)).